CATHERINE V. TROWBRIDGE, Respondent, *v.* KATIE OEHMSEN, Appellant.

Second Department, January 25, 1924.

Vendor and purchaser — action by purchaser to set aside contract of sale of real property and deed, mortgage and bond executed under contract — ground for action is alleged fraudulent representation as to construction of house and materials used — purchaser occupied house nearly eight months before action commenced and was occupying house when this appeal was heard — purchaser examined house twice before buying — case for rescission not shown.

A purchaser of a house is not entitled to have the contract of sale and the deed, mortgage and bond executed thereunder set aside on the ground that the vendor fraudulently represented that the house was a well-built structure, built throughout of new materials, having hard wood floors and furnished with new fixtures, where it appears that the purchaser examined the house very carefully twice before the contract of sale was signed; that she admitted that she knew the house was not a new house within two or three days after she moved in; that she continued to occupy the house for approximately eight months without making

any demand that the contract be rescinded or offer to reconvey the property; that this action was commenced without any previous notice to the vendor; that the purchaser continued to occupy the house after the action was commenced and was occupying it at the time this appeal was heard; that prior to the commencement of the action she had an offer for the house at an advance over the amount she paid therefor; that during the period of occupancy she did not pay the interest or the taxes; and that the court below found as a fact that the house cost the vendor to erect more than the purchaser agreed to pay for it.

JAYCOX and YOUNG, JJ., dissent.

APPEAL by the defendant, Katie Oehmsen, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 22d day of June, 1922, upon the decision of the court rendered after a trial at the Westchester Special Term, canceling and setting aside a contract for the sale of certain real property by the defendant to the plaintiff and also a deed and a mortgage with its accompanying bond executed and delivered pursuant to the terms of said contract.

*William Baruch*, for the appellant.

*Benjamin I. Taylor*, for the respondent.

KELLY, P. J.:

On May 31, 1921, the defendant delivered to the plaintiff a full covenant warranty deed conveying two lots of land situated at Harrison in Westchester county; the deed was recorded on June 1, 1921, and plaintiff at once moved into the dwelling house erected on the premises. The conveyance was made pursuant to a written contract between the parties dated May 21, 1921. The consideration was $10,000, which was paid, $1,000 on the execution of the contract, $1,250 on the delivery of the deed, $4,000 by plaintiff taking the property subject to an existing mortgage for that amount, and the balance, $3,750, by a purchase-money bond and mortgage executed and delivered by plaintiff to defendant.

The contract for the sale of the property provided: " The seller agrees to install a perfect steam heating plant, also a gas range in the house before the delivery of the deed." Evidently the installation of the steam heating plant had not been completed at the date of delivery of the deed, and a further agreement was executed and delivered on that date, as follows:

" WHEREAS, Katie Oehmsen of Harrison, New York, has this day sold and conveyed unto Catherine V. Trowbridge of New York City, house and four lots, nine hundred and sixty (960), nine hundred and sixty-one (961), nine hundred and sixty-two (962), nine hundred and sixty-three (963), Franklin Park, Harrison, for the consideration of ten thousand (10,000) dollars and

" WHEREAS, the said Katie Oehmsen for the purpose of securing

the consideration mentioned in the deed agrees to install a steam heating plant in the house on said lots, within a reasonable time, the said steam heating plant to be in perfect condition and properly installed, sufficient to heat the house in question and also to paint a leader and pipe or to furnish the paint for the same. In the event of the said Katie Oehmsen neglecting, refusing or omitting to complete the installation of the steam heating plant as above referred to, within ninety (90) days from the date hereof, the said Catherine V. Trowbridge shall have the right to install the same and charge the expense thereof against the said Katie Oehmsen, her heirs or assigns.

" The consideration of this agreement is the securing of the said Catherine V. Trowbridge to take title to the property above mentioned.

" In witness whereof the parties hereto have hereunto set their hands and seals this thirty-first day of May, 1921."

On January 17, 1922, the plaintiff commenced this action for rescission of the transaction, alleging that she had been defrauded by defendant. She asked for a judgment canceling the contract, deed, purchase-money bond and mortgage and all liability of plaintiff in connection therewith, and she also demanded judgment, " 2. That it be adjudged that upon a reconveyance of the premises herein described from plaintiff to defendant, the plaintiff have judgment against the defendant and a lien upon said premises for all moneys paid by plaintiff to defendant, whether upon the execution of the contract or the delivery of the deed, and all moneys paid by plaintiff in connection with fixing the front door, windows, making the heating system serviceable, having the floors planed, and put in livable condition, and the French doors so renovated as to keep out the elements, and the moneys which plaintiff paid in connection with having the title examined, legal papers drawn and recorded, the cost of moving from New York City to Harrison, New York, and return thereto, with interest upon each payment from the date that the same was made. 3. That plaintiff have such other and further order, judgment and relief herein as to the Court may seem proper and just, together with the costs and disbursements of this action."

At the date of the commencement of the action, between seven and eight months after the delivery of the deed, the plaintiff was in possession of the premises, occupying the same as a residence, and she was still occupying the premises at the date of the trial, April 5, 1922, and indeed at the date of the argument of the appeal before this court, on December 23, 1923. In the meantime she had paid no interest on the purchase-money mortgage held by

defendant, or the taxes or assessments on the property falling due after the conveyance.

This continued possession and occupation of the premises by one claiming rescission upon the ground of fraud is somewhat unusual. But the entire cause of action alleged in the complaint is unusual. Plaintiff's charge of fraud is based upon allegations in the complaint that the real estate agent who negotiated the sale represented to plaintiff, as she says with the knowledge and consent of defendant, that the dwelling house on the premises " was a well-built, new structure, built throughout of new materials, and in tenantable condition, and that the house was furnished with hardwood floors, and that the same would be furnished with a gas range containing ovens and facilities for baking and cooking; and that the first mortgage was such an obligation that it would not fall due until two years from said date, and that the house was in a good American neighborhood." Plaintiff also alleges in her complaint that " defendant represented the dwelling house upon the premises above described to be a new house, and defendant stated to plaintiff that she had personally superintended the erection and construction of the dwelling house, watched the work as it progressed, and that the work was well done, the materials used were all new materials, and the workmanship throughout were of the best, and that all the floors were hardwood floors, and had been given from four to seven coats of shellac; that the sidewalk in front and to the side of the premises, and leading to the house were fine walks, and cost two hundred fifty ($250.00) dollars; that the entire structure was furnished and built throughout of new materials, and furnished with new fixtures; and that she did not know the people who lived next door, and that  *  *  * the owner of the property next door was a servant girl; and that the mortgage which was a lien on the premises had over two years to run."

It will be perceived that aside from the alleged representations as to the racial and social qualities of the neighbors the principal grievance of the plaintiff is that defendant deceived her by fraudulent statements that the dwelling was a new house, well built, of new materials with hardwood floors and new fixtures, that it was in tenantable condition and that the sidewalks were fine sidewalks which cost $250.

It may be said in passing that the learned justice at Special Term has found as matter of fact that the dwelling house and garage on the premises cost to erect the sum of ten thousand dollars exclusive of the land. Nor is there any dispute that the house had been recently constructed by the defendant owner for

her own use and that it had not been occupied, the defendant explaining that the property had cost so much she could not afford to live in it and had decided to sell it instead. The plaintiff is a woman of mature years, living with her husband who is employed as a claim agent by the New York, New Haven and Hartford Railroad Company, which railroad passes through Harrison. She had at one time owned and occupied a house at Branford, a suburb of New Haven, Conn., and had afterwards lived in New York city. Her children having married, she with her husband decided to purchase a home in the country and they had been looking for a suitable place prior to their visit to the real estate broker who had defendant's property for sale. And the evidence is uncontradicted that plaintiff and her husband first visited the real estate broker on May 15, 1921; he had defendant's house listed for sale with other properties and took the parties to the premises. The plaintiff and her husband went through the house from top to bottom, went into every room and down in the cellar. They were given full opportunity for examination, the real estate agent did not go through the house with them. A few days later the plaintiff visited the house again with her son, a man of mature years; they again visited every room in the house and the garage. Plaintiff never met the defendant personally until May 21, 1921, the day appointed for signing the contract. On that day plaintiff was present with her husband and her son, the contract was prepared by the real estate broker, plaintiff and her husband read it over and it was signed by the parties. Returning to the complaint, we find that plaintiff alleges that the statements made to her were false and fraudulent, made for the purpose of inducing her to buy the property and that she was deceived and misled. She alleges that the dwelling was not a new structure, well built throughout, that the materials and fixtures were not new, that the workmanship was not of good kind and character. She says the greater part of the dwelling was constructed from an old warehouse, shed or barn which defendant had moved about two thousand yards to the premises and constructed a dwelling therefrom; that the roof of the old structure was used as the greater part of the roof of the dwelling purchased by plaintiff and was built over five years and leaked in various places; that the plaster was cheap and inferior; that there were no hardwood floors in the house; that the washtubs were second-hand, without covers or stoppers, the wash tray in the bathroom was second-hand, and that the tiling in the bathroom was of an inferior grade. She alleges that the defendant did not install a gas range as agreed but put in a cheap gas cooker costing about fifteen dollars; and that " the sidewalks

were cheaply laid and constructed so that they will not last through the winter, because they are so cheaply laid and constructed that the cold frost of the winter will heave and break them up; the workmanship throughout the house was so poor that some of the windows and doors actually fell from their hinges and other connections, and the front French doors were so poorly constructed that they cannot be opened, and the hardware of such a poor grade and character that it will not hold the weight of the doors if they are opened."

In addition to this the plaintiff avers that defendant failed to install a steam heating plant " to be in perfect condition, and properly installed, sufficient to heat the house upon the premises, within ninety days from   *   *   *   the 31st day of May, 1921," the date of the supplemental agreement executed at the time of closing title. Plaintiff goes on to say that defendant attempted to place in the living room " a miserable, second-hand radiator; the pipes are not covered, and in some places they are actually exposed to the weather; some portions of the exterior of the building are so poorly constructed that there are openings between the outside doors, so that one can stand in the dining room and look out, with nothing to protect the interior from the weather."

While it is difficult to understand why the plaintiff did not observe many if not all of these alleged defects upon her examination of the premises prior to signing the contract, she admits on cross-examination that she knew it was not a new house " Two or three days after I moved there." She moved in about June 1, 1921.

But instead of promptly rescinding the transaction because of the alleged fraud practiced upon her, we find her still occupying the premises in January, 1922, seven or eight months thereafter, when she commenced her action without any previous notice or demand for rescission or offer to reconvey the property, and in her complaint she alleges that she spent one hundred and five dollars " in order to have the floors in the house made serviceable," and " it cost plaintiff the sum of $5.65 to have hinges placed thereon suitable to hold the weight of the door." She alleges that she was obliged to pay twelve dollars and fifteen cents for repairs to a window, and two dollars and fifteen cents for repairs to water faucets; that she spent seventy-five dollars to put on storm doors, " all of which sums were actually spent by plaintiff, relying upon the truth of the representations and statements of defendant, and her said agents and representatives, and will necessarily be spent in order to make the house tenantable." She alleges that " it will cost at least Two hundred ($200.00) Dollars to tear the roof off the old structure and build a new one thereupon, and even then the

structure will still be an old one, with old beams, side walls and fixtures." She avers that because defendant did not install a heating system in perfect condition " plaintiff shall, in order to make the premises temporarily livable during the winter, be obliged to spend the sum of Seventy-five and no /100 ($75) Dollars in installing a radiator in the living room and covering the heating pipes where they are exposed to the weather and elements. The radiators and pipes exposed in the different rooms in the house have never been gilded, the boiler and pipes in the cellar have never been covered with asbestos, all of which is necessary to be done in order to make the system complete, properly installed, and sufficient to heat the house, at a cost of One hundred fifty ($150.00) Dollars." Plaintiff has been informed that it will cost at least sixty dollars to purchase and install a gas range and three hundred dollars to put in hardwood floors, and at least two thousand dollars to tear out the old fixtures, woodwork and second-hand materials and tear down and rebuild and restore the same, and rebuild and restore the improperly constructed walls and ceilings. She alleges that she paid fifty-six dollars expenses of moving from New York to Harrison and shall be obliged " upon the surrender of the premises " to again remove to New York at an additional expense of fifty-six dollars. She says she paid a woman seventeen dollars and fifty cents for cleaning the house and seventeen dollars and forty cents for a screen door and having the same hung and having the refrigerator space in the pantry enlarged and poles hung for the hanging of clothes. She purchased window shades, screens and a refrigerator at a cost of eighty-six dollars and twenty-five cents and spent fifty dollars for insurance premiums.

If this were an action at law to recover damages sustained by plaintiff by reason of fraudulent representations made by defendant, it may be that some of these items might properly be asserted by plaintiff as a ground of recovery. In such an action the issue would still remain whether plaintiff had been defrauded, whether the alleged representations had been made and whether plaintiff relied upon them or was in fact deceived. As to most of the alleged defects it is difficult to understand how plaintiff could have been deceived or misled because, apparently, on her own testimony she had full opportunity to inspect and did actually inspect the premises before she signed the contract. But if we grant that despite her contract and delivery of the deed and purchase-money mortgage, as fraud vitiates all contracts and the law does not regard with favor the defense of carelessness or contributory negligence on the part of the party defrauded, that plaintiff, therefore, might be able to state a cause of action at law,

in my opinion the plaintiff's conceded acts and the allegations in her complaint are irreconcilable with her claim for rescission of the transaction.

Upon the trial the plaintiff offered evidence on these various items of expense incurred and to be incurred to cure the alleged defects and to bring the house to the condition which plaintiff charged was represented to her, but after much of the evidence had been received the learned trial justice perceiving the inconsistency in plaintiff's position announced that he would " strike out all the question, of damages," and he said, " I think all you can do is to have a rescission of the contract and stop right there. I will strike out the damages now."

But, of course, the evidence remained that plaintiff, instead of promptly rescinding the contract if she had cause for rescission, remained in possession and proceeded to make repairs and alterations and additions to the dwelling and was in fact in possession at the time of the trial, all of which is inconsistent with her claim for rescission.

This action was commenced in January, 1922, without any previous demand for rescission or offer to restore the property to defendant. There is in the complaint a very unusual and limited offer to restore, which can only be understood by inserting it in full:

" *Twenty-Third.* Plaintiff stands ready and willing and hereby offers to reconvey the premises herein described, to the defendant, upon such terms and conditions as to the Court may seem proper and just and upon such conveyance plaintiff shall be entitled to be reimbursed for all moneys spent by her in moving from the City of New York to Harrison, New York, and return; in having the title examined, legal papers drawn and recorded; the floors planed, the faucets, doors and windows put in a livable condition; the cost of putting the French doors and heating system in such shape that the same might be at least temporarily used, and such repairs as were necessarily made in order to put the premises in a livable condition."

And another very important fact developed upon the trial, which it seems to me is inconsistent with plaintiff's demand for rescission: It appears that prior to the commencement of the action, while Mrs. Trowbridge, the plaintiff, was in possession of the premises, an offer was made to her by the real estate agent through whom she purchased the property, to sell the house and obtain as much as she paid or more if she wanted to sell it. Mrs. Trowbridge admits that the agent told her he could sell the property for what she had paid for it " and even at an advance."

" Q. And you told him what?   A. That I did not care to dispose of the property and I did not want the same state of affairs that existed with me and I did not want a lawsuit on my hands with a leaky roof, I could not represent it as a new house because it was not a new house." The offer of the real estate broker did not call upon the plaintiff to make any false representations. He offered her more than she had paid for it and she refused the offer. The shortage in housing accommodations was prevalent at the time, and property values increased rapidly and substantially. But the defendant, who denies that she or the real estate agent made any false representations to Mrs. Trowbridge, who denies that plaintiff was deceived or defrauded, who insists that the house was in fact a new house, never occupied, costing as the court has found the full amount paid by the plaintiff exclusive of the land, and who testified that the property cost her $10,600 and with agent's commissions on the sale $500, she was out of pocket $1,100, the defendant was never informed of this opportunity to sell at a profit.

Mrs. Trowbridge continued to occupy the premises without paying any interest on the purchase-money mortgage or taxes and assessments, and has obtained the decree appealed from, dated June 22, 1922, rescinding the entire transaction, canceling the contract, the deed and the purchase-money bond and mortgage, directing the plaintiff to reconvey the premises to defendant, who must return the deposit of $1,000, with interest from May 21, 1921; the sum of $1,250 paid on delivery of the deed, with interest from June 4, 1921; $141.20 paid by plaintiff for title insurance, and directing that the premises be reconveyed subject to the State, county and town taxes which became due during plaintiff's occupancy.

I think the plaintiff failed to make out a case for rescission and that the judgment must be reversed.

" Where a purchase is induced by the fraud of the vendor, the purchaser as a general rule has an election of remedies. On the one hand he may sue the vendor in an action on the case for damages, or if sued for the agreed price he may set off or recoup his damages resulting from the fraud. On the other hand he may rescind the sale and recover the consideration paid. The two remedies are inconsistent, the one being based on the continued existence of the sale, the other on its abrogation, and the purchaser cannot in the one form of action secure the relief appropriate to the other." (27 R. C. L. " Vendor and Purchaser," § 81 and cases cited. See, also, *Stevens* v. *Mayor, etc.*, 84 N. Y. 296, 305.)

The right to rescind a contract for fraud must be exercised

immediately upon its discovery; delay in rescission or the continued employment, use and occupation of the property will be deemed an election to affirm it. (*Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.*, 230 N. Y. 316, 325; *Strong* v. *Strong*, 102 id. 69; *Pryor* v. *Foster*, 130 id. 171; *Gould* v. *Cayuga County Nat. Bank*, 86 id. 75; *Hallahan* v. *Webber*, 7 App. Div. 122; *Martin-Barris Co.* v. *Jackson*, 24 id. 354.)

Whether the plaintiff has a cause of action at law for damages for fraud is not before us on this appeal. Much might be said in support of defendant's claim that plaintiff was in no way deceived. I think the parties should be left to try that issue out if plaintiff sees fit to institute such an action. Upon the evidence here, the findings that plaintiff was deceived or misled and so induced to purchase the property are, in my opinion, contrary to the evidence.

The judgment should be reversed upon the law and the facts, with costs, and the complaint dismissed, with costs, without prejudice to plaintiff's right to begin an action at law for damages if she is so advised. The following findings of fact made at Special Term should be reversed as contrary to the evidence: So much of the 3d finding of fact as finds that defendant represented to the real estate agent that the dwelling house was a new structure well built of new materials. So much of the 5th finding of fact as finds that the real estate agent represented the dwelling to be a new structure well built of new materials. The 6th and 7th findings of fact. So much of the 8th finding of fact as finds that plaintiff in making the contract for purchase relied upon representations of defendant that the dwelling was a new structure or built of new materials. So much of the 10th, 11th and 12th findings of fact as finds that plaintiff in the transactions referred to relied upon representations of defendant or the real estate agents as to the age of the structure or the character of the materials or fittings. The 13th, 14th, 15th and 16th findings of fact. So much of the 17th finding of fact as finds that plaintiff relied upon representations of defendant or the real estate agents. The 18th finding of fact. This court reverses all of the conclusions of law. This court finds the facts requested by defendant in her requests to find numbers II to XIV inclusive, also the conclusions of law requested by defendant numbered III and IV.

MANNING and KAPPER, JJ., concur; JAYCOX and YOUNG, JJ., dissent.

Judgment reversed upon the law and the facts, with costs, and complaint dismissed, with costs, in accordance with opinion. Settle order on notice.