SADIE GOLDMAN, Respondent, v. ANNA SONTAG and Others, Appellants, Impleaded with ROSE PARK CORP. and Others, Defendants.

Third Department, November 1, 1939.

*John D. Lyons* [*Samuel Mezansky* with him on the brief], for the appellants.

*Benjamin M. Goldstein* [*Ellsworth Baker* of counsel], for the respondent.

HILL, P. J. Defendants Anna Sontag, Abraham Sontag, H. Kimmelman & Co., Inc., and Harry Kimmelman have appealed from a unilateral judgment of rescission in favor of the plaintiff, which determines that the agreement between plaintiff and Agassiz Realty Corporation is void; that a deed given by plaintiff to defendant Anna Sontag conveying a residence in Sullivan county is void, and the clerk of that county is directed to make an appropriate entry in his records; that a conveyance by Anna Sontag of the residence in Sullivan county to the defendant Rose Park Corp. is void, and the clerk of the county is directed to make appropriate entries in his records; that Sadie Goldman is the owner of the residence in Sullivan county which she had conveyed to Anna Sontag; that she recover of all the defendants $1,000 and interest thereon being the payment made by her to effect the exchange of the Sullivan county residence for property located in the borough of the Bronx, New York city, and that the bill of sale from her to defendant Anna Sontag is void.

The *dramatis personæ* here presented and the items of property involved are, Sadie Goldman and her husband, Isidore Goldman.

The latter was formerly engaged in the real estate business in New York city. She was the owner of a dwelling in Sullivan county which had been partially destroyed by fire, and compensated for, in whole or in part, by insurance of $4,000, of which about $500 had been expended upon repairs, the house at the time of the transaction being still in a wrecked and hardly habitable condition, with no stairway leading from the first to the second floor, and the plumbing and heating fixtures of little use. These parties were represented by their attorney, Jacob Gold. Most active among the defendants was Harry Kimmelman, the husband of the defendant Anna Sontag and son-in-law of the defendant Abraham Sontag, the first of the last-mentioned defendants doing business in her maiden name, having bank accounts and a separate vocation from that of her husband. She and her father owned the capital stock of the defendant Agassiz Realty Corporation. That corporation held the record title to an apartment house located at 1023 Longwood avenue, Bronx. H. Kimmelman & Co., Inc., was a corporation engaged in the real estate business, of which Harry Kimmelman was the most active official. A Mr. Warshawsky was the attorney for Kimmelman and his group. The plaintiff and her husband orally agreed with Kimmelman to exchange the Sullivan county residence for the Longwood avenue house, the plaintiff to pay $1,000 difference and $150 toward Kimmelman's brokerage fees. The two attorneys prepared an unsigned memorandum in November, 1934.

" Re: Isidore Goldman

" A deal is pending whereby Issie will transfer his house in Monticello, New York, for a house now owned by the Aggazzis Realty Corp. at 1023 Longwood Avenue, Bronx, New York. The deal is that in consideration of Sadie Goldman transferring her house in Monticello, she or her assignees will receive the premises at 1023 Longwood Avenue, Bronx, New York subject to the following mortgages. A first mortgage of $44,000 held by a savings bank. There is now in arrears interest, taxes and penalties of approximately $2785.00 which Goldman will have to take over. There is no second mortgage on the premises. Besides taking over the arrears and mortgage, a payment of $1000 is to be made to secure the deed.

" The broker is H. Kimmelman & Co., 2374 Amsterdam Ave., New York City. The Aggazzis Realty Corp. will pay him his commission except that Goldman will contribute $150 towards his commission.

" Issie is in arrears a years taxes in Monticello amounting to about $50 which Aggazzis Realty Corp. will assume.

"The closing is to take place Saturday, December 1st, 1934, at 11:00 A. M.

"Goldman's Address:

"6817 20th Avenue,

"Brooklyn, N. Y."

The more formal agreement of December first recites, concerning the Longwood avenue property, that $44,000 of principal was due on the mortgage and $2,600 interest as of October 1, 1934; water rates for 1934, $208.52; meter charge, $29.20; balance of the first half of the 1934 taxes amounting to $296, and the entire amount for the second half of that year. The Agassiz Corp. was required to, and did, pay $350 on the mortgage due in November, 1934. Adjustments as to rents and insurance policies were to be made as of December 15, 1934, "except that the party of the second part is accepting the said premises subject to arrears [of] taxes and interest to the date of the closing as more specifically herein set forth * * *." The plaintiff agreed to make the $200 payment due the mortgagee for the month of December. Annexed to the formal agreement was a list of the amounts then being received as rent, aggregating $692 per month. Later deeds were exchanged and plaintiff paid the $1,000 agreed difference in value of the properties, and $150 as commission to Kimmelman. Plaintiff made no payments to the mortgagee except in December, 1934, and January and February, 1935, and no payments of taxes. Foreclosure was commenced late in May, 1935. In June the property was conveyed by direction of plaintiff to the mortgagee.

The original complaint pleaded fraudulent representations in two particulars: (1) Defendants misrepresented the number of tenants in the building and the amount of rent which was being received; (2) that the mortgagee had agreed to wait for two years for the payment of the interest in arrears, and, by an order made a year after the case was submitted and some nine months after it was decided, it was pleaded that the defendant Harry Kimmelman "was in full charge" of the Longwood avenue property and was personally financing it at the time of the transfer, and that he wrongfully concealed this connection from the plaintiff, as he did the fact that he was the husband of Anna Sontag and the son-in-law of Abraham Sontag; that he acted in bad faith in accepting the $150 from plaintiff in part payment of his real estate commissions. The complaint pleads that plaintiff upon the discovery of the fraud "offered to tender back unto the defendants, such of them as would be entitled thereto" the property on Longwood avenue. It was verified on July 23, 1935. More than a month earlier, the Longwood property, at the direction of the plaintiff, had been

conveyed to the bank which held the mortgage. There was no proof in support of the allegation of a tender. There was failure to establish any substantial misrepresentation as to the tenants living in the property, or the rents received therefrom. The representation was that November, 1934, rent receipts were $692. There was no representation that the tenancies would continue. Plaintiff received half of the December rents and made no complaint. The trial court found that plaintiff's agent and husband admitted receiving $606 for the month of January. This admission was made to a representative of the mortgagee and in connection therewith plaintiff's agent stated that three of the apartments were vacant. The tenant of apartment three, one of those stated to be vacant, testified to his occupancy thereof in January, 1935, and that he paid thirty dollars therefor. Thus the January rents were $636, and if the agent was as forgetful concerning the other claimed vacancies, the January rents amounted to more than that stated to have been received in November. Plaintiff was required to make a payment of $200 a month upon the mortgage. She made none from February until the latter days of May when foreclosure was begun. The testimony given by an agent of the mortgagee as to conversations had with the plaintiff or her agent disproves the assertion that plaintiff understood or believed that the mortgagee had agreed to defer foreclosure for two years. Foreclosure would be inevitable if the mortgagor failed to make the stipulated current payments.

The three corporate defendants were unquestionably personal and family corporations. Kimmelman, Inc., consisted of the individual defendant Kimmelman, his brother and possibly another. Rose Park Corp., organized in March, 1935, undoubtedly was a Kimmelman-Sontag corporation, the Agassiz Realty Corp. was at one time a Sontag corporation, and later a Goldman (plaintiff) corporation. It should be remembered that these parties dealt at arms length, each with an attorney. The transfer of the Longwood avenue property was made by the consent and approval of plaintiff's attorney, through the transfer to herself and her husband of all the capital stock of the last-mentioned corporation. Upon the trial she sought to prove a tender by an offer to deliver the stock certificates of the corporation, which had been denuded of all assets by the transfer of the Longwood avenue property to the mortgagee. It is unquestioned that the Agassiz Corp. was a legal entity, for it accepted deeds, gave mortgages and was used as an instrumentality by the plaintiff. Proof was lacking to deprive any of the corporate defendants of legal existence. Each had a franchise to be a corporation, each functioned. (*Klinkenstein* v.

*Third Ave. R. Co.*, 216 App. Div. 187; *McIlrath* v. *Waterbury & Sons Co.*, 193 id. 491.) Kimmelman could represent his wife, who was engaged in a separate enterprise, and a corporation of which she was a stockholder.

Plaintiff kept the Longwood avenue property from December 15, 1934, until June 17, 1935, when it was deeded to the mortgagee. During that time rents of substantially $3,000 were received and only $600 of interest paid on the mortgage. Delay for that length of time and the failure to tender the property back, prevents plaintiff from maintaining this action for rescission. The only excuse given by plaintiff for not making a tender is a claimed conversation between her husband and Kimmelman, denied by the latter, that when Goldman told Kimmelman that the mortgagee would pay $250 for a deed in order to obviate the necessity of a foreclosure, the latter said, " grab it." If the statement were true, it would not relieve plaintiff of the necessity of a tender, or of making an offer to replace defendants in the position they occupied before the contract was made.

" In an action at law based upon a rescission of a voidable contract, the rule has long been established that the party must restore or offer to restore before suit whatever he has received by virtue of the contract." (*E. T. C. Corp.* v. *Title Guar. & Trust Co.*, 271 N. Y. 124, 127.) " To entitle a party to proceed as upon a rescission of the fraudulent contract, the tender or restoration must be to the other party, and must be without qualifications or conditions. Every right under the repudiated contract must be absolutely surrendered. The conclusion we thus reach leaves a defrauded party with ample remedies. One situated like the plaintiff can rescind by tendering or restoring what he has received, and then commence his action. He may keep what he has received and sue to recover damages for the fraud; or he may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore, in case he is not entitled to retain, what he has received. These actions are all fundamentally different." (*Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 84.) This doctrine is announced in the same case on a later appeal. (99 N. Y. 333.) " In an action for rescission solely the contract may not be affirmed in part and rescinded in part. If it cannot be rescinded in its entirety, it cannot be rescinded at all." (*Friedman* v. *Richman*, 213 App. Div. 467; affd., 241 N. Y. 576.) " The right to rescind a contract for fraud must be exercised immediately upon its discovery; delay in rescission or the continued employment, use and occupation of the property will be deemed an election to affirm it." (*Trowbridge* v. *Oehmsen*, 207 App. Div. 740; affd., 241 N. Y. 564.) " The

power of any party  *  *  *  to avoid a transaction for fraud or misrepresentation is conditional on an offer made promptly after acquiring knowledge of the fraud or misrepresentation to return the amount of any money or other performance received as part of the transaction, in substantially as good condition as when received by him." (Restatement, Contracts, § 480.)

Fair dealing requires that plaintiff should seek her remedy, if she is entitled to relief, in an action for damages. Defendants have expended a large sum of money, according to the evidence $5,000, in rebuilding the burned residence in Sullivan county. Under the judgment appealed from, plaintiff receives, without consideration, the benefit of those expenditures, the rent from the Longwood avenue property for six months, and the $250 paid by the mortgagee for a transfer by her corporation.

The judgment should be reversed on the law and facts.

CRAPSER, BLISS and HEFFERNAN, JJ., concur; SCHENCK, J., dissents, and votes for affirmance.

Judgment reversed on the law and facts, with costs, and a new trial as in an action for damages granted if plaintiff desires and is able to amend her complaint to state such a cause of action.

The court disapproves the following findings of fact contained in the decision: Numbers 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, and all findings of fact contained in the portion of the decision captioned conclusions of law.